## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Asha S.,                                                    Civ. No. 21-1014 (BRT)

       Plaintiff,

v.                                                          **MEMORANDUM**
                                                            **OPINION AND ORDER**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

       Defendant.

Gerald S. Weinrich, Esq., Weinrich Law Office, counsel for Plaintiff.

Elvi Jenkins, Esq. Social Security Administration, counsel for Defendant.

BECKY R. THORSON, United States Magistrate Judge.

      Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits. This matter is before the Court on the parties' cross-motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 16, 18.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## BACKGROUND

### I.     Procedural History

      On October 16, 2018, Plaintiff applied for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act,

alleging a disability onset date of March 27, 2018.[1] (Tr. 10, 271–77, 278–86.)[2] The Social

Security Administration ("SSA") denied Plaintiff's application and again on

reconsideration. (Tr. 199–203, 209–11, 213–15.) On August 11, 2020, following a

hearing, an Administrative Law Judge ("ALJ") found that Plaintiff was not disabled.

(Tr. 7–22.) On February 26, 2021, the SSA's Appeals Council denied Plaintiff's request

for review of the ALJ's decision (Tr. 1–3.) The Appeals Council's decision is the final

decision of the Commissioner. 20 C.F.R. § 404.981.

## II.    Relevant Evidence

The Court adopts and incorporates the facts contained in the Administrative

Record (Doc. No. 15), and will include the relevant facts as necessary in the discussion

below.

## DISCUSSION

## I.    Standard of Review

A claimant is disabled if she is unable to "engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's

impairments must be "of such severity that she is not only unable to do her previous work

---

[1]    This is not Plaintiff's first time applying for disability benefits. In 2015, Plaintiff applied for disability benefits, but was ultimately determined to be not disabled. (*See* Tr. 62–86.)

[2]    Throughout this Memorandum Opinion and Order, the abbreviation "Tr." is used to reference the administrative record. (Doc. No. 20.)

but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The claimant bears the burden of proving disability. *Whitman v. Colvin*, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant demonstrates that she cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

The Court has the authority to review the Commissioner's final decision denying disability benefits to Plaintiff. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). If the Commissioner's decision is supported by substantial evidence in the record as a whole, then the decision will be upheld. 42 U.S.C. § 405(g); *Kluesner*, 607 F.3d at 536 (citations omitted). "[T]he substantiality of the evidence must take into account whatever fairly detracts from its weight, and the notable distinction between 'substantial evidence' and 'substantial evidence on the record as a whole,' must be observed." *Bauer v. Soc. Sec. Admin.*, 734 F. Supp. 2d 773, 799 (D. Minn. 2010) (citations omitted). This test requires "more than a mere search of the record for evidence supporting the Secretary's findings." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). If, after review, the record as a whole supports the Commissioner's findings, the

Commissioner's decision must be upheld, even if the record also supports the opposite conclusion. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

## II.   Analysis

Plaintiff raises two issues on appeal. First, Plaintiff argues the Commissioner erred by not giving "greater weight" to the opinions and observations of her treating providers and the consultive examiners regarding her functional limitations. (*See* Doc. No. 17, Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") 10–13.) Second, Plaintiff argues that the residual functional capacity ("RFC") determined by the ALJ is not supported by substantial evidence. (*See id.* at 13–15.) In response, the Commissioner argues that the ALJ did not err in evaluating the opinions and observations of Plaintiff's treating providers and consultive examiners and that the RFC is supported by substantial evidence. (*See generally* Doc. No. 19, Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mem.").)

### A.  The ALJ's decision

The SSA has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 416.920(a)(4) (explaining the five-step sequential evaluation process). Steps one through three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her disability meets or equals a listed impairment. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); 20 C.F.R. §§ 416.920(a)-(d), 404.1522. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Pate-Fires*, 564 F.3d at 942; *see also* 20 C.F.R. § 416.920(e).

4

Before step four, the ALJ assesses the claimant's RFC, "which is the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); *see also* 20 C.F.R. §§ 416.920(e), 404.1545; 416.945(a) ("Your residual functional capacity is the most you can still do despite your limitations."). At step four, the ALJ must determine whether the claimant can return to his past relevant work. 20 C.F.R. § 416.920(f). If the ALJ finds at step four that a claimant cannot return to past relevant work, the burden shifts to the SSA at step five to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* §§ 416.920(g), 912, 960(c).

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since March 27, 2018, the alleged disability onset date. (Tr. 12.) At step two of the analysis, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder, post traumatic stress disorder ("PTSD"), schizoaffective disorder, degenerative disc disease of the lumbar spine, mild degenerative joint disease of bilateral hips, migraine headaches, and obesity. (Tr. 12–13.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12–13.) Next the ALJ determined Plaintiff had the following RFC:

> [Plaintiff can] perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally climb ramp and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She should avoid extreme heat and extreme cold along with concentrated exposure to pulmonary irritants, such as dusts, gases, fumes, or other respiratory irritants. She should avoid dangerous work place hazards, such as unprotected heights or dangerous moving machinery. She can perform simple, routine tasks, not involving complex decision-making

or judgment. She can have occasional contact with co-workers, supervisors, and the general public.

(Tr. 15.) Considering the RFC and the testimony of the vocational expert, the ALJ found that Plaintiff could not perform her past relevant work as a packager, housekeeper, or caregiver. (Tr. 20.) However, at step five, after considering Plaintiff's RFC, age, education, and work experience along with the testimony of the vocational expert, the ALJ found that Plaintiff could perform various jobs that exist in significant numbers in the national economy. (Tr. 21.) Accordingly, the ALJ concluded that Plaintiff is not disabled. (Tr. 22.)

### B. Medical opinions

Without indicating any specific medical opinion, Plaintiff argues that the ALJ did not properly address the medical opinions of her treating physicians or the consultive experts in her RFC determination. The RFC is a measure of "the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1). When determining the RFC, an ALJ must consider all medical opinions submitted and evaluate them for persuasiveness. 20 C.F.R. § 404.1520c. For claims like Plaintiff's that were filed on or after March 27, 2017, the weight assigned to medical opinions is governed by 20 C.F.R. § 404.1520c. *Pemberton v. Saul*, 953 F.3d 514, 517 n.2 (8th Cir. 2020). Under this regulation,[3] the ALJ does not defer to any medical opinions, including opinions from the

---

[3]     Plaintiff states that "opinions and observations of a treating physician are generally entitled to controlling, [sic] weight if well supported by medically accepted laboratory diagnostic techniques and not inconsistent with other substantial evidence in the case record." (Pl.'s Mem. 10.) But this standard comes from 20 C.F.R. § 404.1527 and only applies to claims filed before March 27, 2017. Plaintiff filed her case on

claimant's treating medical sources. 20 C.F.R. § 404.1520c(a). The ALJ instead considers

all medical opinions according to five factors: (1) supportability; (2) consistency;

(3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R.

§ 404.1520c(c). Supportability[4] and consistency[5] are the most important factors, and the

ALJ must explain how those two factors were considered in determining the

persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ is not

required to explain the remaining factors unless the ALJ "find[s] that two or more

medical opinions . . . about the same issue are both equally well supported . . . and

---

October 16, 2018. (Tr. 10.) Therefore, the new regulation, 20 C.F.R. § 404.1520c, is the applicable standard. This new regulation eliminates the so-called "treating physician rule" from the evaluation process, no longer deferring controlling weight to treating physicians' opinions. 20 C.F.R. § 1520c(a).

[4]   The regulations define the factor of "supportability" as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1)

[5]   The regulations define the factor of "consistency" as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The word "consistent" in the regulations "is the same as the plain language and common definition of 'consistent'" and "includes consideration of factors such as whether the evidence conflicts with other evidence from other medical sources and whether it contains an internal conflict with evidence from the same medical source." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854 (Jan. 18, 2017).

consistent with the record . . . but are not exactly the same." 20 C.F.R. § 404.1520c(b)(2)-(3).

In her decision, the ALJ discussed the persuasiveness of various medical opinions within the record, including three opinions from Dr. Jennifer Neumann (Plaintiff's treating physician), three opinions from Dr. Joseph Wilson (Plaintiff's treating psychiatrist), one opinion from consultative examiner Debra Morgan, L.P., two opinions from medical consultants Dr. Steven Richards and Dr. Gregory Salmi, and two opinions from psychology consultants Dr. S. Hill and Dr. P.E. Shields. The Court addresses each below.

### 1. The July 2018, June 2019, and January 2020 opinions of Jennifer Neumann, DNP

Dr. Neumann began treating Plaintiff on June 26, 2018. (Tr. 493.) On July 9, 2018, Dr. Neumann filled out a single-paged "Medical Opinion" form—the July 2018 opinion—in which she listed Plaintiff's diagnoses, including depression, anxiety, PTSD, insomnia, hallucinations, fatigue, GERD, hypothyroidism, hypertension, migraines, high cholesterol, back pain, imbalance, neck pain, ankle pain, vitamin D deficiency, asthma, cataracts, and hearing loss. (Tr. 472.) On the form, Dr. Neumann checked a box next to the question "Patient will not be able to perform any employment in the foreseeable future," but added the following handwritten notation: "conditions need to be managed better prior to making an informed guess at duration of disability." (*Id.*)

Plaintiff continued treatment with Dr. Neumann for several months, addressing several of her health concerns. On June 3, 2019, Dr. Neumann saw Plaintiff for a physical

exam. (Tr. 742.) In her notes regarding the exam—the July 2019 opinion— Dr. Neumann stated that Plaintiff had mental health conditions of schizophrenia, hallucinations, and anxiety and opined that such conditions would possibly cause "a problem with sustainable employment." (*Id.*)

On January 27, 2020, after caring for Plaintiff for approximately two years, Dr. Neumann wrote a letter—the January 2020 opinion—addressing Plaintiff's limitations, which stated the following:

> [Plaintiff] has chronic back, neck, hip, and leg pain. She also suffers from chronic migraines. She has tried multiple oral analgesics. [Plaintiff] has been referred to a pain specialist who has recommended intra-articular joint injections. [Plaintiff] has a great deal of anxiety regarding the injections. She has not received the injections at this time.
>
> She also carries a diagnosis of diabetes mellitus type II. She has a history of taking insulin in the past which controlled her diabetes quite well. Due to her anxiety, we attempted to transition her to oral agents. Unfortunately this is [sic] not been as successful regarding controlling her diabetes. We are slowly transitioning her back to Insulin at this time. She is extremely anxious regarding going back and [sic] Insulin.
>
> [Plaintiff] does not speak English very well. She requires an interpreter. [Plaintiff] also does not drive. She requires transportation to and from places.
>
> If [Plaintiff] were to have a volunteer job or work for an income, she would need to take more frequent breaks than are in a typical job, she would need to change positions frequently or at will, she would need transportation to and from the position, she would need an interpreter to help her understand instructions, and she would require frequent days off for appointments, as well as unscheduled time off for flare-ups of conditions.

(Tr. 789–90.)

The ALJ addressed all three of Dr. Neumann's opinions in her decision and found each one unpersuasive:

Jennifer Neumann, DNP, opined in July 2018 and in June 2019 that the claimant cannot perform any employment in the foreseeable future and her mental health conditions would cause a problem with sustainable employment (B2F; B11F/36). These opinions are unsupported because she does not provide a function-by-function assessment. Additionally, this opinion is not persuasive because it is a finding reserved for the Commissioner.

. . . .

Jennifer Neumann, DNP, also opined in January 2020 that the claimant requires frequent breaks and days off, along with unscheduled time off. She opined that she needs to change positions frequently or at will. She opined that she needs transportation to and from work and an interpreter to help understand instructions. These limitations are unsupported because it is vague and does not provide a function-by-function assessment. Moreover, the frequent breaks, time-off, and absenteeism is unsupported because she does not provide an explanation for these limitations (B14F). Additionally, these limitations are inconsistent with treatment records, which show that aside from tenderness in her lumbar spine, the claimant had normal musculoskeletal and neurological findings on exam, was able to ambulate independently and did not require an assistive device. (B18F/11, 22, 34; B22F/17, 38; B9F). Therefore, this opinion is not persuasive.

(Tr. 18–19.)

As discussed below, the Court finds that the ALJ properly weighed each of Dr. Neumann's opinions. As cited above, Dr. Neumann stated in her July 2018 and June 2019 opinions that Plaintiff's diagnoses would interfere with her ability to maintain sustainable employment. (Tr. 472, 742.) But, as the ALJ noted, Dr. Neumann did not, in her July 2018 and June 2019 opinions, discuss any functional limitations related to Plaintiff's impairments or give further explanation of her opinion on Plaintiff's ability to maintain sustainable employment. *See, e.g.*, *Alia D. v. Kijakazi*, No. 21-CV-366 (MJD/LIB), 2022 WL 3718600, at *14 (D. Minn. July 27, 2022) ("Even where CNP Bergeron lists some of Plaintiff's symptoms on the check-box form she fails to provide

any explanation as to how those symptoms rendered Plaintiff unable to work on a regular basis. This further undermines the persuasiveness and evidentiary value of CNP Bergeron's October 26, 2018, opinion."), *report and recommendation adopted*, 2022 WL 3717186 (D. Minn. Aug. 29, 2022). Moreover, Dr. Neumann only commented on whether Plaintiff could sustain employment, which is an issue reserved for the Commissioner. 20 C.F.R. § 404.1520b(c)(3).[6] Because Dr. Neumann's July 2018 and June 2019 opinions only opined on whether Plaintiff could sustain employment, her "opinions" did not constitute medical opinions. *See Pierce v. Kijakai*, No. 20-CV-1426, 2022 WL 888141, at *7 (E.D. Mo. Mar. 25, 2022) ("Because Gardner did not identify what Pierce can still do despite her impairments and the issue of whether Pierce can work is a matter reserved to the Commissioner, Gardner's report did not constitute a medical opinion under sections 404.1513(a)(2) and 416.913(a)(2)."); *see also Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) ("A medical source opinion that an applicant is

---

[6]     Issues reserved for the Commissioner include: "(i) Statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work; (ii) Statements about whether or not you have a severe impairment(s); (iii) Statements about whether or not your impairment(s) meets the duration requirement (see § 404.1509); (iv) Statements about whether or not your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (v) Statements about what your residual functional capacity is using our programmatic terms about the functional exertional levels in Part 404, Subpart P, Appendix 2, Rule 200.00 instead of descriptions about your functional abilities and limitations (see § 404.1545); (vi) Statements about whether or not your residual functional capacity prevents you from doing past relevant work (see § 404.1560); (vii) Statements that you do or do not meet the requirements of a medical-vocational rule in Part 404, Subpart P, Appendix 2; and (viii) Statements about whether or not your disability continues or ends when we conduct a continuing disability review (see § 404.1594)." 20 C.F.R. § 404.1520b(c)(3).

'disabled' or 'unable to work,' however, . . . is not the type of 'medical opinion' to which the Commissioner gives controlling weight.").[7] Accordingly, the ALJ properly evaluated Dr. Neumann's July 2018 and June 2019 opinions by finding them unpersuasive.

The ALJ also properly evaluated Dr. Neumann's January 2020 opinion. Though more developed than her July 2018 and June 2019 opinions, Dr. Neumann's January 2020 opinion did not provide a function-by-function assessment or, for that matter, much explanation for the advised limitations that Plaintiff would need to take more frequent breaks, change positions frequently, and require frequent days off as well as unscheduled time off. Instead, Dr. Neumann reiterated her diagnoses and mentioned Plaintiff's anxiety regarding some of her treatment. (*See* Tr. 789.) The ALJ thus properly found that Dr. Neumann's January 2020 opinion was unsupported. Additionally, substantial evidence in the record supports the ALJ's finding of an inconsistency based on Plaintiff's normal musculoskeletal and neurological findings, her ability to ambulate independently, and her not requiring an assistive device. For example, Dr. Neumann had previously doubted that Plaintiff would be able to get disability based on her physical conditions: "I also told her that physically, I am not sure if [social security] will approve her based on her diagnoses." (Tr. 742.) Also, Plaintiff's physical exams indicated that Plaintiff had a

---

[7]     The Court notes that the ALJ did not explicitly discuss the consistency factor when evaluating these opinions. But while a discussion of consistency is required by the new regulations, that is only required when an opinion is considered a "medical opinion." Here, because Dr. Neumann's July 2018 and June 2019 opinions would not be considered medical opinions under the regulations, the ALJ was not required to consider the factors under 20 C.F.R. § 404.1520c(c) when evaluating them.

normal gait with normal physical movement. (*See, e.g.*, Tr. 513, 522 (noting Plaintiff had a normal gait); 658 (noting that Plaintiff walked "normally without the use of an assistive device"); Tr. 876, 899, 1258 (noting that Plaintiff had a normal range of musculoskeletal range of motion). Because substantial evidence supports the ALJ's decision that Dr. Neumann's January 2020 opinion was unsupported and inconsistent, the ALJ properly weighed Dr. Neumann's January 2020 opinion.

### 2. The December 2018, February 2019, and December 2019 opinions of Dr. Joseph Wilson

Dr. Joseph Wilson is Plaintiff's psychiatrist who has treated Plaintiff's mental conditions since June of 2018. (Tr. 644.) In December 2018, Dr. Wilson filled out a Mental Medical Source Statement ("MMSS") for Plaintiff — the December 2018 opinion. (Tr. 644–47.) In it, Dr. Wilson diagnosed Plaintiff with major depressive disorder with psychotic features and mild anxiety. (Tr. 644.) He then indicated in a check-box format that Plaintiff, along with various mild and moderate limitations, had "marked limitations"[8] in several cognitive functions, including maintaining attention and concentration for more than two-hour segments; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; sustaining an ordinary routine without special supervision; and responding appropriately to changes in the work setting. (Tr. 645.) He opined that Plaintiff would require unscheduled breaks during an 8-hour workday (but did not specify how many) and that

---

[8] A "marked limitation," as defined on Dr. Wilson's MMSS, is a "serious limitation" that shows "substantial loss in the ability to function independently, appropriately, and effectively on a sustained basis." (Tr. 645.)

she would need more than 3 days off per month as a result of her impairments or as a result of necessary medical treatment. (Tr. 646.)

A few months later, in February 2019, Plaintiff presented to Dr. Wilson with complaints of anxiety and noted hearing voices. (Tr. 748.) Dr. Wilson performed an exam, then made the following notation:

> I think that she likely has Schizoaffective Disorder rather than psychotic depression and I have changed her diagnosis. We will try to simplify her medication regimen by gradual titration of duloxetine over the next several weeks. I don't think that she can maintain gainful employment in the national economy.

(Tr. 753.)

In December 2019, Dr. Wilson filled out another MMSS — the December 2019 opinion. He indicated in an identical check-box format that Plaintiff, along with various mild and moderate limitations, had "marked limitations" in some of the same several cognitive functions he had marked in the December 2018 MMSS, with some changes. (Tr. 785.) He also opined, identically to the December 2018 MMSS, that Plaintiff would require unscheduled breaks during an 8-hour workday (but did not specify how many) and that she would need more than 3 days off per month as a result of her impairments or as a result of necessary medical treatment. (Tr. 786.)

In evaluating Dr. Wilson's opinions, the ALJ first considered Dr. Joseph Wilson's February 2019 opinion that Plaintiff could not maintain gainful employment in the national economy. (Tr. 19.) She found it unpersuasive because it was "a finding reserved for the Commissioner." (Tr. 19.)

The ALJ next considered Dr. Wilson's December 2018 and 2019 opinions together. (Tr. 19.) She found them unpersuasive as well for the following reasons:

> These limitations are unsupported because Dr. Wilson does not provide any explanation for his findings[.] (B13F; B7F). Further, the claimant's testimony and inability to provide answers to any questions would demonstrate she is very inconsistent with the objective evidence, and the providers appear to rely on her self-report of symptoms. These limitations are also inconsistent with her exams, which aside from an anxious and depressed mood, she is cognitively intact. The record shows she is well groomed, has a goal directed thought process, oriented, normal memory, good attention, appropriate to situation, pleasant, cooperative, and has no suicidal or homicidal ideation (B18F/11; B6F/12; B11F/20, 28, 36, 44-45, 53-54; B8F). Moreover, she is able to schedule and attend doctor appointments (B11F/12). Objectively, the evidence does not support the extreme limitations noted in this opinion. Therefore, this opinion is not persuasive.

(Tr. 19.)

Without making any specific argument, Plaintiff argues that the ALJ ignored or discounted the opinions of Dr. Wilson and Plaintiff's other mental health providers. (Pl.'s Mem. 12.) However, like with Dr. Neumann's July 2018 and June 2019 opinions, the ALJ properly discounted Dr. Wilson's February 2019 opinion because it only commented on whether Plaintiff could sustain employment, which again, as noted above, is an issue reserved for the Commissioner. 20 C.F.R. § 404.1520b(c)(3). Indeed, as previously discussed, because Dr. Wilson provided no further explanation or supporting opinions on Plaintiff's functional limitations, Dr. Wilson's opinion need not be addressed as a medical opinion because it relates to an issue reserved for the Commissioner. *See Pierce*,

2022 WL 888141, at *7. Accordingly, the ALJ did not err when considering Dr. Wilson's February 2019 opinion.[9]

As for Dr. Wilson's December 2018 and 2019 opinions, substantial evidence supports the ALJ's decision that these opinions are unpersuasive. Again, these opinions were submitted as check-box forms in which Dr. Wilson indicated various functional limitations on Plaintiff's ability to work. But as the ALJ noted, Dr. Wilson failed to provide any explanation within the form itself. (*See* Tr. 644–47, 784–87.) The ALJ both explained the lack of support found in the check-box forms,[10] and laid out the inconsistencies in Dr. Wilson's treatment notes about Plaintiff's cognitive abilities. For example, Plaintiff was consistently observed to be well groomed, have goal directed

---

[9]     The Court notes that Dr. Wilson included similar notes about Plaintiff's inability to "maintain gainful employment" throughout his notes in Plaintiff's medical records. (*See, e.g.*, Tr. 762, 771, 982, 1073.) The ALJ did not err by failing to address every instance of this comment. First, as discussed previously, this is an issue reserved for the Commissioner and does not constitute a medical opinion. 20 C.F.R. § 404.1520b(c)(3); *See Pierce*, 2022 WL 888141, at *7. Second, the Commissioner is given some leniency by the regulations with how they consider multiple medical opinions from one medical source. *See* 20 C.F.R. § 404.1520c(a)–(b) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."). Accordingly, to the extent Plaintiff argues that the ALJ should have addressed these additional notations by Dr. Wilson, the Court concludes the ALJ did not err.

[10]    The Eighth Circuit has held that "an ALJ can give limited weight to a physician's conclusory statements." *Grindley v. Kijakazi*, 9 F.4th 622, 632 (8th Cir. 2021) ("The check-box form only allowed for conclusory statements and did not give Dr. Heck the chance to explain whether he concluded that Grindley was disabled. Instead, the form stated that Grindley had the capacity to sit or stand for two hours at a time and engage in some light lifting, without any further analysis or explanation."). Dr. Wilson's forms were check-box forms that offered no additional explanation. The ALJ treated them as conclusory statements and found them unsupported for this reason.

thought processes, have normal memory, have good attention, and was pleasant and cooperative. (*See, e.g.*, Tr. 712, 718, 726, 734, 750–51, 759–60, 967, 980, 985, 1036.) Also, Plaintiff appeared mentally stable at her appointments. (*See, e.g.*, Tr. 975, 1016.) Moreover, the ALJ clearly indicated that Dr. Wilson, instead of relying on objective evidence, appeared to base his limitations on Plaintiff's self-reporting, which were inconsistent with the findings of Plaintiff's mental exams noted above. *See Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016) (finding ALJ permissibly declined to give controlling weight to treating physician on workplace limitations insofar as they relied on the claimant's unreliable subjective complaints). And the record indicates that Plaintiff reported feeling better regarding her mental issues, due in part to her medications. (Tr. 977); *see Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (concluding that impairments that are controllable or amenable to treatment do not support a finding of disability).

Therefore, because substantial evidence supports the ALJ's decision that Dr. Wilson's December 2018 and 2019 opinions were unsupported and inconsistent, the ALJ did not err in finding Dr. Wilson's December 2018 and 2019 opinions unpersuasive.

### 3. The January 2019 opinion of Debra Moran, L.P.

On January 30, 2019, Plaintiff appeared for a consultative psychological evaluation by consultative examiner Debra Moran, L.P. (Tr. 649–54.) Along with inquiring about Plaintiff's history, Moran conducted a mental status examination. (Tr. 652–53.) According to Moran, the mental health exam revealed that Plaintiff's

memory appeared impaired and that she had issues with communication and persistence.

(*Id.*) Based on her exam, Moran made the following assessment:

> She has a number of medical issues. Pace is likely to be slow. Persistence and concentration are likely limited. Her ability to understand very simple instructions may be limited. Her ability to tolerate workplace stressors is likely limited. She was able to interact adequately with this examiner albeit on a very limited basis. She would likely need assistance managing funds if benefits are granted.

(Tr 653.) In her decision, the ALJ found Moran's opinion partially persuasive because the limitations given, though sometimes vague, were generally supported and consistent with the treatment records. (Tr. 18.) Thus, the ALJ concluded that the limitations were "persuasive and generally support[ed] a finding that [Plaintiff was] able to perform simple and routine tasks on a sustained and ongoing basis." (Tr. 18–19.)

Plaintiff does not develop any argument in her briefing on why the ALJ erred in evaluating Moran's opinion. Instead, Plaintiff merely repeats the observations and limitations expressed in Moran's opinion and then argues more globally that the ALJ appeared to ignore observations and conclusions. But the ALJ did not ignore Moran's observations and conclusions. In fact, the ALJ found them persuasive and incorporated Moran's limitations into her findings. To the extent Plaintiff is arguing that the ALJ somehow erred in her evaluation of Moran's opinion, the Court finds that the ALJ properly considered the factors of consistency and supportability. Additionally, as the ALJ noted, Moran's limitations were mostly consistent with treatment records and supported by the exam. (Tr. 18.) Therefore, because the ALJ properly evaluated Moran's

opinion and substantial evidence supports the ALJ's evaluation, the ALJ did not err in evaluating Moran's January 2019 opinion.

### 4. The opinions of medical consultants Drs. Steven Richards and Gregory Salmi

On May 29, 2019, state agency consultant Dr. Steven Richards completed a consultative examination at the initial level of Plaintiff's disability application. (Tr. 107–10.) Dr. Richards found that, based on Plaintiff's diagnoses and past evaluations, Plaintiff would be capable of "a light RFC with appropriate restrictions." (Tr. 110.) At the reconsideration level, Dr. Gregory Salmi found on July 18, 2019, that Dr. Richards's initial assessment was persuasive, consistent, and supported based on the medical evidence. (Tr. 166.) More specifically, both consultants found that Plaintiff could frequently climb ramps and stairs, and occasionally climb ladders, ropes, or scaffolds; that Plaintiff could occasionally stoop and crouch; and that Plaintiff could frequently kneel and crawl. (Tr. 113–15, 163–64.) Additionally, both consultants found that Plaintiff should not be required to do tasks that need normal visual acuity, such as reading smaller than typed size print, seeing small objects in the distance, or driving a commercial vehicle. (*Id.*)

The ALJ found both consultants opinions "partially persuasive," and explained why:

> The light work and environmental limitations are supported because the consultants note that the claimant reported pain, but generally had normal range of motion on exam (B3A; B4A; B9A; B10A). However, the vision limitations are not persuasive as the record shows that her vision is corrected with glasses (B9F).

19

(Tr. 20.)

Again, Plaintiff does not develop any argument in her briefing on why the ALJ erred in evaluating Drs. Richards and Salmi's opinions but instead argues generally that the ALJ appeared to ignore the observations and conclusions of the consultants. Here, the ALJ did not ignore Drs. Richards and Salmi's opinions but instead found them partially persuasive. The only portion the ALJ did not find persuasive related to Plaintiff's vision. The ALJ's finding that this portion was not supported by the record and inconsistent with her ability to wear correcting lenses is supported by substantial evidence. (*See, e.g.*, Tr. 814 (describing Plaintiff's vision as "adequate" with the use of glasses.) Therefore, because substantial evidence supports the ALJ's decision that Drs. Richards and Salmi's opinions were partially persuasive, the ALJ did not err in evaluating Drs. Richards and Salmi's opinions.

### 4. The opinions of psychology consultants Drs. S. Hill and P. E. Shields

On March 6, 2019, state agency consultant Dr. S. Hill completed a consultative examination at the initial level of Plaintiff's disability application, and on August 16, 2019, Dr. P. E. Shields completed a consultative examination at the reconsideration level. (Tr. 117–19; 166–68.) Both consultants found that Plaintiff suffered from moderate limitations in all functional domains, except a mild limitation in understanding, remembering, or applying information. (*Id.*) The consultants also found that Plaintiff could understand and remember simple instructions; perform simple, repetitive tasks; respond appropriately; and deal with changes in a work setting. (*Id.*) The ALJ found Drs. Hill's and Shields's opinions persuasive:

> These limitations are supported because the consultants note that the claimant's report of her symptoms appear more restricted than objective mental status would suggest and she did not put much effort in her consultative exams (B3A; B4A; B9A; B10A). Moreover, these limitations are consistent with treatment records, which show that aside from her depressed and anxious mood, she had normal mental status findings (B18F/11; B6F/12; B11F/20, 28, 36, 44-45, 53-54; B8F).

(Tr. 20.)

To the extent Plaintiff argues that the ALJ ignored the observations and conclusions of Drs. Hill's and Shields's opinions, there is no indication that the ALJ did not account for any observations or conclusions made by Drs. Hill and Shields. In fact, the ALJ found their opinions persuasive. If Plaintiff is instead arguing that the ALJ should have found them *less* persuasive in light of other observations and conclusions, substantial evidence supports the ALJ's determination that Drs. Hill's and Shields's opinions were consistent with the record. Notably, the record shows that Plaintiff failed to put much effort in her exams, giving the false suggestion that her symptoms appeared more restricted. (*See, e.g.*, Tr. 653 (noting very limited persistence and not answering basic questions); Tr. 681 (noting that Plaintiff, during pulmonary function test, "acted like she couldn't do anything, almost like she just would give up and say she can't"). And, as cited above, the record demonstrates consistent normal mental status findings. (*See, e.g.*, Tr. 712, 718, 726, 734, 750–51, 759–60, 967, 975, 980, 985, 1016, 1036.) Therefore, because substantial evidence supports the ALJ's decision that Drs. Hill's and Shields's opinions were persuasive, the ALJ did not err in evaluating Drs. Hill's and Shields's opinions.

**5. Other evaluations not addressed by the ALJ**

In addition to the examination of these opinions, Plaintiff alludes to the ALJ failing to address certain evaluations, particularly Dr. A. Neil Johnson's and Janise Trueblood's, PT, DPT evaluations. Upon reviewing Dr. Johnson's medical evaluation documents from March 9, 2019, it is apparent that his evaluation would not qualify as a medical opinion, thus the ALJ did not err by not addressing its persuasiveness. Dr. Johnson does not make any findings about Plaintiff's functional limitations or other disability-related opinions. (*See* Tr. 656–70.) Dr. Johnson's evaluation contains only examination notes and some initial conclusions related to Plaintiff's various impairments, without offering any other opinions regarding any specific work-related limitations. (*See* Tr. 659–60.) This would not be considered a medical opinion, *see* 20 C.F.R. § 404.1513(a)(2); thus, the ALJ did not err by not formally weighing it in her decision.

Plaintiff also alludes to an evaluation by her physical therapist Janise Trueblood, PT, DPT, who determined during a physical examination that Plaintiff had an impaired gait, could sit for less than an hour, and could stand for less than ten minutes. (Tr. 828–31.) Trueblood, however, is a physical therapist who holds degrees in physical therapy (PT) and Doctor of Physical Therapy (DPT). She is not a licensed physician and thus is not considered an acceptable medical source under the regulations. *See* 20 C.F.R. § 404.1502(a) (listing acceptable medical sources); *see also Michel v. Colvin*, 640 F. App'x 585, 594 (8th Cir. 2016) ("A physical therapist is not an acceptable medical source.") (quotations omitted). Because Trueblood is not considered an acceptable medical source, her observations do not constitute a medical opinion. *See* 20 C.F.R. § 404.1513(a)(2)

(defining "medical opinion" as "a statement from a *medical source* about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in certain abilities) (emphasis added). As such, the ALJ was not required to articulate how she considered Trueblood's observations. *See* 20 C.F.R. § 404.1520c ("We will articulate how we considered the medical opinions and prior administrative medical findings in your claim."). Additionally, contrary to the Plaintiff's argument that the ALJ ignored Trueblood's observations, the ALJ indicates in her decision that she reviewed Plaintiff's physical therapy records in evaluating her RFC. (Tr. 17 (noting that Plaintiff received physical therapy for her degenerative disc disease). For this reason, and because Trueblood's observations are not considered a medical opinion, the ALJ did not err by not formally weighing them in her decision.

## C. Residual functional capacity

Plaintiff also argues that substantial evidence does not support the ALJ's finding that she was capable of performing light work with some exceptions. Specifically, Plaintiff argues that the ALJ's RFC determination is contradicted by Dr. Johnson's findings that Plaintiff was limited in her ability to walk and engage in normal movements and findings that Plaintiff suffered auditory and visual hallucinations, impaired memory, and severe isolation.

A court cannot reweigh the evidence or "reverse the Commissioner's decision merely because substantial evidence would have supported an opposite conclusion or merely because [a court] would have decided the case differently." *Harwood v. Apfel*, 186 F.3d 1039, 1042 (8th Cir. 1999); *see also KKC ex rel. Stoner v. Colvin*, 818 F.3d

364, 369 (8th Cir. 2016) (noting that the Commissioner's decision will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently") (quotations omitted). Though Plaintiff points to other record evidence that indicates some limitations, this evidence does not detract from the substantial evidence that supports the ALJ's RFC determination.

For example, though Dr. Johnson indicated some minor limitations in movement (such as a slower walk with some observed limping), substantial evidence in the record showed that in several physical exams Plaintiff exhibited a normal gait with normal physical movement. (*See, e.g.*, Tr. 513, 522, 876, 899, 1258.) Even Dr. Johnson himself stated that Plaintiff could walk "normally without the use of an assistive device" and that he had trouble getting a full evaluation of Plaintiff's orthopedic maneuvers because she did not exhibit effort in certain tests. (Tr. 657–60.) The ALJ also noted that evidence showed that Plaintiff consistently maintained normal range of motion, sensations, reflexes, and motor strength without any evidence of positive straight-leg raising. (Tr. 17, 876, 899, 1258, 1279.) And Drs. Richards and Salmi's opined that Plaintiff could perform light work.

As for Plaintiff's mental impairments, although Plaintiff experienced some hallucinations, the record indicates this was controlled with the help of medication. (Tr. 977.) Also, as noted above, Plaintiff was consistently observed to be well groomed, have goal directed thought processes, have normal memory, have good attention, and was pleasant and cooperative, (*see, e.g.*, Tr. 712, 718, 726, 734, 750–51, 759–60, 967, 980,

985, 1036), and Plaintiff appeared mentally stable at her appointments, (*see, e.g.*, Tr. 975, 1016.) Moreover, treatment notes revealed Plaintiff had average intelligence, linear though process, and appropriate judgment. (Tr. 17, 718, 726, 734, 742, 750–51, 759.) These findings are echoed in Drs. Hill's and Shield's opinions that Plaintiff could understand and remember simple instructions; perform simple, repetitive tasks; respond appropriately; and deal with changes in a work setting. (Tr. 117–19; 166–68.)

Plaintiff points out that throughout the hearing before the ALJ, Plaintiff could not answer simple questions, including her birthday, her address, how old she was when she immigrated to the United States, or if she attended school. (Tr. 16, 40–43.) She argues that her poor ability to answer questions at the hearing is indicative that she cannot respond appropriately and thus is mentally limited. But the ALJ properly found that this was more indicative of Plaintiff's "lack of effort" to answer questions, rather than her mental ability, which is a finding consistent with other findings by medical professionals in the record. (*See, e.g.*, Tr. 653 (noting that Plaintiff displayed very limited persistence in her mental examination and was "very fast to say 'I don't know'" when asked to compute certain mathematical problems); Tr. 660 (noting that Plaintiff refused to move her back and left ankle and that she did not exhibit the expected effort in her grip test); Tr. 681 ("She acted like she couldn't do anything, almost like she just would give up and say she can't."); Tr. 742 (noting that Plaintiff insisted she could not close her hands: "She then held up her hands and stated than she could not close her hands. I looked at her hands and calmly held them and said, 'Yes you can.' We opened and closed our hands together")).)

For all of the reasons stated above, and because substantial evidence supports the ALJ's RFC determination, the Court finds that the ALJ did not err in determining that Plaintiff could perform light work with certain limitations noted in the ALJ's decision.

### ORDER

Based on the foregoing, and on the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Motion for Summary Judgment (Doc. No. 16) is **DENIED**; and

2.  Defendant's Motion for Summary Judgment (Doc. No. 18) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date: September 13, 2022                      *s/ Becky R. Thorson*
                                              BECKY R. THORSON
                                              United States Magistrate Judge